UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

---

FAIR HOUSING CENTER OF METROPOLITAN
DETROIT, a nonprofit corporation

Plaintiff,

v.

HIGGINS GROUP, d.b.a., CLIFFVIEW APARTMENTS,
a corporation.

Defendant.

FILE NO. 24-        CV
Hon.

| | |
|---|---|
| WILLIAM F. PJPER, PLC<br>William F. Piper (P38636)<br>Attorney for Plaintiff<br>9848 Portage Rd.<br>Portage, Ml 49002<br>(269) 321-5008<br>(269) 321-5009 (facsimile)<br>wpiper@wpiperlaw.com | |

## **COMPLAINT**

The plaintiff by and through its attorney William F. Piper, PLC, for its complaint, states as follows:

### **JURISDICTIONAL ALLEGATIONS**

1.     The plaintiff Fair Housing Center of Metropolitan Detroit is a nonprofit corporation that does business in the County of Oakland, State of Michigan, and other counties.

2.     The defendant Higgins Group is a corporation doing business in the County of Oakland, in the City of Rochester Hills.

3.      This matter arose in the City of Rochester Hills at Cliffview Apartments, which the defendant owned or operated, or both, upon information and belief, and it applied its no felony convictions policy regarding tenant eligibility there.

4.      This matter arises under the Fair Housing Act of 1963, as amended, 42 U.S.C. §3601 *et. seq.*

5.      Certain claims in this action arise under this court's supplemental jurisdiction to hear and decide state law claims arising out of the same transactions and occurrences as the federal law claims.

## COMMON ALLEGATIONS

6.      The plaintiff restates and realleges as though fully set forth herein paragraphs 1-5 of this complaint

7.      This policy or practice of the defendant of automatically excluding people with felony convictions from a tenancy is absolute and does not permit exceptions, regardless of the nature of the conviction, the age of it, evidence of rehabilitation, or any other factor bearing upon whether the person is a threat to safety, property, or has the ability to pay.

8.      As a result of the aforementioned policy or practice, prospective tenants at Cliffview Apartments are either deterred from applying for a tenancy or automatically denied after spending money on an application because of the defendant's no felony convictions policy or practice.

9.      Since 1980, the number of persons incarcerated in prison in the United States has grown from 300,000 to more than 1.3 million today.

10.     At the same time as the sheer numbers of people with criminal convictions has substantially increased, it has become much easier for housing providers to identify and ban people from housing because of criminal convictions because of the digitalization of records

and the growth of private companies that provide inexpensive background checks on prospective tenants.

11.     The massive increase of incarceration and the number of people with criminal records has had an unequal impact on African-Americans and people with drug addictions that resulted in felony charges and convictions but who have since rehabilitated and became productive citizens.

12.     African-Americans are incarcerated at rates that are disproportionate to the numbers in the United States general population. African-Americans, in 2018, comprised approximately 32.8% of all prisoners, but only make up approximately 12.00% of the United States adult population, according to U.S. census Bureau of Justice Statistics.

13.     Furthermore, although only 8% at the United States adult population has a felony conviction, 33% of adult black men have a felony conviction, according to the Vera Institute of justice.

14.     According to the sentencing Project, in "The color of Justice Racial and Ethnic Disparity in State Prisons," Michigan is one of only 12 states where over half the prison population is black.

15.     According to the same study, the white imprisonment rate for the State of Michigan was 230 per 100,000, while the corresponding rate for African-Americans was 1,682 per 100,000.

16.     In a recent study by the Prison Policy Initiative, at Appendix A of it, there were 791 whites incarcerated out of 1,202,362 whites in Oakland County, while there were 732 incarcerated African-Americans out of 164,078 African-Americans in Oakland County.

17.     The rate of overrepresentation of whites incarcerated versus whites not incarcerated was 0.63, while the rate of overrepresentation of blacks incarcerated versus blacks not incarcerated was 3.23, according to the same study, with respect to Oakland County.

18.     That African-Americans are far more likely than whites to have a criminal record means that African-Americans are far more likely than whites to be excluded from housing by automatic exclusion of people with criminal records.

19.     In April 2016, the U.S. Department of Housing and Urban Development ("HUD") issued interpretive guidance confirming that automatic bans, like the defendant's no felony convictions policy which have a disproportionate adverse effect on African-Americans because of disparities in the criminal Justice system; moreover, HUD's guidance cautioned that automatic bans, which categorically exclude applicants because of their criminal history, are *never* necessary to achieve the potentially legitimate interest of protecting safety or property. See (HUD, *Office of Gen. Counsel Guidance on Application of FHA Standards to the Use of Criminal Records by Providers of House and Real Estate-Related Transactions)* ("HUD Guidance") (Apr. 4, 2016) at 2-7. The HUD Guidance further explains that this applies to automatic bans based either on arrests or convictions. *Id.* [1]  This policy has been recently revised and strengthened.

20.     Automatic bans of persons for felony convictions necessarily discriminate against people with a former disability of drug addiction, who have rehabilitated and reformed and who have become productive citizens not dangerous to others.

21.     Studies have shown that although African-Americans and whites use illegal drugs at the same general rate, African-Americans are systematically more likely to be arrested and prosecuted for such use. Given the "war on drugs", this has resulted in disproportionate conviction rates of African-Americans for illegal drug offenses relative to whites.

---

l The HUD Guidance explains the appropriate analysis in detail but does not change the law; automatic bans violate the Fair Housing Act independent of the Guidance. See *Jackson* v *Tyron Park Apartments. inc.,* No. 6:18-CV.06238 EAW, 2019 WL 3:31635, at *3•5(W.D.N.Y. Jan. 25, 20l9).

22.     The Equal Employment Opportunity Commission's ("EEOC") analysis of the impact of automatic criminal history bans in the employment context further confirms the disparate impact described here, The EEOC analyzed national criminal records data and concluded that automatic criminal history bans have a disparate impact on the basis of race, and it documented its findings in its Enforcement Guidance on the Consideration of Arrest and Conviction Records in employment Decisions Under Title VI of the Civil Rights Act of 1964 ("Enforcement Guidance"). [2]

23.     The EEOC's conclusion applies to the disparate impact analysts here because categorical criminal records bans operate the same way in housing as they do in employment In both contexts, applicants are informally and permanently excluded, whether from housing opportunities or employment, before due consideration of the merits or qualifications of the applicant for housing or a job in question and without any individualized assessment of whether their criminal history makes them personally unqualified. They are excluded based solely on the fact of a prior conviction or even a pending criminal charge, regardless of whether they pose a current risk.

24.     African-Americans and persons with a former disability of drug addiction seeking to rent an apartment unit at Cliffview Apartments are substantially more likely than whites to be harmed by the defendant's blanket no felony convictions policy irrespective of the exact boundaries of the rental market.

25.     The defendant's refusal to provide housing to people with felony convictions directly causes a racially disparate, adverse impact on African-Americans and persons with a former disability of drug addiction.

2 2012 WL 149988.J (Apr, 25, 2012). The prior versions from 1987 and I 990 reached the same conclusion and set forth the same presumption, 7

26.     Extensive research establishes that protecting safety and property does not justify a blanket no felony convictions policy. The research shows that additional factors, such as the amount of time since the last offense, the person's age, and the type of conviction, must be considered to assess whether a past felony conviction suggests a risk of future criminal conduct.

27.     The amount of time since the last offense is a critical factor in making this assessment. Studies show that in seven years or even fewer, the risk of future arrest for somebody with a past conviction becomes no greater than the risk for somebody without a past conviction. [3]   One more recent study found that negative outcomes in rental housing specifically, are no more likely once a criminal conviction is five years old and once a misdemeanor conviction is just two years old. [4]

28.     The rental housing study also demonstrated that the type of conviction is important in predicting whether a person's criminal record indicates a heightened risk. [5]   It found that for 11 out of 15 categories of crime studied there is no statistically meaningful increase in negative outcomes for renters with a past conviction in comparison to renters without a criminal history. These 11 categories include minor drug offenses, prostitution, alcohol related offenses, and minor public disorder offenses. The increase in the other four categories is small, and, as explained above, disappears over time.

29.     Studies show that a person's age and frequency of past criminal activity are also key factors in determining whether the individual poses any risk to safety or property. [6]   People with a criminal record who are older, and those with fewer criminal offenses, are much less

---

[3] Megan C, Kurlychek et al., *Scarlet letters and Recidivism: Docs an Old Criminal Record Predict Future Offending? 5* Criminology and Pub. Pol'y 483 (2006). *See also* Alfred Blumstein and Kimtnori Nakamura, *Redemption in the Presence of Widespead Criminal Background Checks,* 47 Criminology 327 (2009)

[4] Cael Warren, Success in Housing: How Much Does Criminal Background Matter?, Wilder Research (2019), https://www.wilder.org/sites/default/files/imports/AEON_Housing_Success_CriminalBackground_Report_1-19.pdg.

[5] *See Id.*

[6] See Shawn Bushway et al., the Predictive Value of Criminal Background Checks: Do Age and Criminal History Affect Time to Redemption?, 14 Criminology 27, 52 (2011).

likely to engage in future criminal conduct or pose a threat to the community.

30.     Accordingly, concerns about safety and the protection of the property do not provide a substantial and legitimate rationale for a broad blanket ban on eligibility like the defendant's no felony convictions policy.

31.     Giving individualized consideration to each potential resident's circumstances is a less discriminatory alternative to a no felony convictions policy and would address any substantial, legitimate, nondiscriminatory justification for the policy.

32.     Specifically, to the extent that public safety or protection of property at Cliffview Apartments is a valid justification, this can be accomplished through the use of individualized assessments that consider the nature of an individual's conviction, the amount of time since the conviction or release, and the evidence of rehabilitation, among other factors. An individualized assessment allows people with a criminal record, but who pose no realistic current or future threat to the community, to obtain housing. This more tailored approach both protects public safety and property and is less discriminatory and exclusionary because it reduces the number of African-Americans and people with a past disability of drug addiction applicants who are categorically banned from Cliffview Apartments.

33.     The HUD Guidance Expressly calls for the use of individualized consideration as a less discriminatory alternative to an automatic exclusion on the basis of criminal history, through consideration of factors such as "the facts or circumstances surrounding the criminal conduct; the age of the individual at the time of the conduct; evidence that the individual has maintained a good tenant history before and/or after the conviction or conduct; and evidence of rehabilitation efforts." [7]

---

[7] *See* HUD Guidance at 7

34.     In the analogous employment context, the EEOC recognizes that individualized assessments are almost always required by law because they provide a less discriminatory alternative to automatic criminal history bans and are sufficient to protect legitimate interests, including safety. Specifically, the EEOC Enforcement Guidance advocates the use of "a targeted screening considering at least the nature of the crime, the time elapsed, and the nature of the job." [8]

35.     This screening should include "notice to the individual that he has been screened out because of a criminal conviction; an opportunity for the individual to demonstrate that the exclusion should not be applied due to his particular circumstances; and consideration by the employer as to whether the additional information provided by the individual warrants and exception to the exclusion and shows that the policy as applied is not job related and consistent with business necessity." [9]

36.     On March 11, 2022 a tester called Cliffview Apartments and left a message with his contact information.

37.     On March 15, 2022 the same tester spoke with Cheryl, a rental agent of the defendant with authority for renting apartment units at Cliffview Apartments and told her he was looking for an apartment for his over-62-year-old-client.

38.     Cheryl told the tester that he would have to apply, fall in the income range, meet the requirements and have no felonies.

39.     In response, the tester told Cheryl that the client had a felony years ago for child support.

40.     Cheryl then told the tester about the client "He can't move in here."

---

[8] *Enforcement Guidance at 14*
[9] *Id.*

41.     Cheryl then told the tester, after the tester told her that he worked for the State of Michigan, to look on the defendant website cliffviewapartments.com, in case he had any other clients that may qualify.

42.     On June 3, 2022 a tester called Cliffview Apartments, asserting that she was making the call for her brother.

43.     The tester inquired about the availability of one- or two-bedroom apartments.

44.     Cheryl stated that they had a few, but they were already rented out.

45.     Cheryl told the tester to apply on the defendant's website, stating, additionally, that a credit and criminal background check would have to be completed and the brother would have to pass.

46.     The tester then asked what if her brother had a criminal record from twenty years ago when he was really young.

47.     Cheryl then stated that if anyone ever had a felony, no matter how long ago, they would not be able to live there.

48.     Cheryl further explained to the tester that Cliffview Apartments was a HUD facility and that persons with felony convictions were not allowed to live at Cliffview Apartments no matter how long ago the felony was or what the felony was.

49.     The tester then stated that her brother was very young when he had committed the felony.

50.     Cheryl responded by saying that it did not matter, as it was its policy to decline anyone from a tenancy who had a felony on their record.

51.     On October 3, 2022 a tester for the plaintiff called Cliffview Apartments and spoke with Heather, who told the tester on behalf of the defendant that the office is closed on Monday but would be open from Tuesday through Friday, from 9:00 a.m. to 5:00 p.m.

52.     The tester gave her contact information, hoping for a call back.

53.     On October 4, 2022 Shirley Anderson for the defendant called and left a message for the tester at 10:16 a.m.

54.     The tester called and left another message at 12:35 p.m., but she did not receive a return call.

55.     On November 10, 2022, the tester received a return call from Cheryl from Cliffview Apartments.

56.     The tester asked Cheryl when a one-or two-bedroom apartment might be available, and Cheryl indicated that an upper floor one bedroom would be available in February.

57.     The tester indicated that she was doing the legwork for her brother.

58.     Cheryl indicated that he would have earn less than $39,780 per year, be not a full-time student, not have been convicted of a felony, and be a citizen.

59.     A short time later the tester called back and spoke again to Cheryl, and after asking Cheryl what her brother needed to do, Cheryl indicated that he could fill out an application online, paying the application fee.

60.     The tester then mentioned that her brother was 63 now but had a felony when he was twenty years old.

61.     Cheryl, after the tester indicated that her brother was 63 now and he was working, then indicated that, "He can't live here if he's had a felony anytime in his life, yeah, unfortunately, HUD won't let him apply."

62.      Cheryl then added "Good luck in your search."

63.     The Cliffview Apartments written policy, regarding tenant qualifications, states in part, "Anyone who has been convicted of a felony you are not eligible for this housing program."

64.     The defendant's overly broad ban against renting to persons who have felony convictions prevents any individualized consideration. Because the defendant would not have to compromise any legitimate concerns that they may have by giving individualized consideration to applicants' particular circumstances and allow those individuals whose tenancy would not threaten public safety or a property interest to live at Cliffview Apartments, the defendant's policy of automatically excluding people with felony convictions is not necessary to achieve a substantial and legitimate business interest.

65.     Several factors strongly indicate that the real reason the defendant adopted the no felony convictions policy was not to protect safety or property, or for any other substantial and legitimate reason, but to reduce the number of African-American people and people with a past disability of drug addiction who are eligible to become tenants. Specifically, the defendant's decision to maintain a far reaching no felony convictions policy, despite the housing industry's rejection of such policies precisely because of their discriminatory impact, suggests that this policy was intended to limit the number of such people living at Cliffview Apartments.

66.     Intentional discrimination may be inferred from a number of factors, including whether the challenged action weighs more heavily on one group than another, whether there have been changes in normal procedures, and whether there have been substantive departures from usual practices. [10]

*67.*     The statistical disparities here are extraordinary.  That is, the difference in the rates at which prospective African-American tenants are adversely affected by the policy is dramatically larger than the rate at which prospective white tenants are affected.  This is not a situation where a facially neutral policy harms minorities 10% or 20% more frequently than it

---

[10] *Vilt. Of Arlington Heights* v *Metro. Dev. Corp.,* 429 U.S. 252 (1977).

harms non-minorities. Rather, as shown above, otherwise qualified African-Americans are more likely than whites to be barred from Cliffview Apartments because of the defendant's no felony convictions policy. Moreover, these dramatic disparities are entirely foreseeable because of well-known disparities in the criminal justice system. As the Supreme court has explained, large statistical disparities are "often a telltale sign of purposeful discrimination[.]" [11]

68.    The HUD Guidance was released over six years ago, in April of 2016, and it has been well publicized to housing providers. Major industry organizations including the National multifamily Housing Council, the National Apartment Association, and the National Association of Realtors, as well as local organizations, all disseminated information about the HUD Guidance and emphasized the importance of dispensing with automatic criminal history bans that the defendant referenced HUD requirements in banning any person with criminal records shows knowledge of HUD guidelines and requirements and conscious disregard of them.

69.    The Guidance is not ambiguous; it clearly explains how broad based criminal background policies that rely on criminal histories cause a disparate impact on people of color, how automatic blanket bans [12] that categorically exclude applicants as a result of their criminal history are not necessary to satisfy a legitimate business interest, and that giving individualized consideration to applicants based on factors such as the nature of conviction and evidence of rehabilitation is a less discriminatory alternative that satisfies legitimate interests in protecting safety and property.

70.    Accordingly, on information and belief, the defendants are aware of the disparate and discriminatory impact that its no felony convictions policy has on African-Americans and people

---

[11] Int'l Bhd Of Teamsters v United States, 431 U.S. 324, 339 n.20(1977).
[12] Nat'l Ass'n of Realtors, *What the Latest Fair Housing Guidance on Criminal Background Checks Means for Real Estate* (May 13, 2016), https:/ /nar.reltor/newsroom/what-the-latest-fair- housing-guidance-on-criminal-background-checks-means-for-real-estate; Va. Ass'n of Realtors, *Criminal Background Checks Under the Fair Housing Act (Nov.*15, 2017).

with a past disability of drug addiction and they are aware of a less discriminatory approach to screening potential tenants-individualized assessment of the potential tenant's criminal history and accommodating people with a past disability of drug addiction based on the factors identified above- that would not only protect its safety and property interests but would also comply with the federal Fair Housing Act and State HUD's Guidelines and with state law. However, despite this knowledge and awareness, the defendants maintain exactly the type of policy that the HUD Guidance rejects. The defendants deliberately chose to implement and maintain the more discriminatory method for criminal records screening that automatically excludes a greater number of prospective tenants who are African-American and people with a past disability of drug addiction. One can infer from this that the disparate outcome identified by HUD is exactly the outcome intended by the defendants.

71.    The defendant's choice to maintain the overly broad and discriminatory no felony convictions policy also reflects a substantial departure from usual industry practices, which further raises an inference of discriminatory intent.

72.    The defendant's outright rejection of applicants with felony convictions is entirely counter to normal business practices in the apartment industry. In the normal course of business, landlords and property managers are highly motivated to get people in the door to see their buildings. Even if someone who visits does not become a tenant, word of mouth is an important component of apartment marketing, as visitors may tell other about the building.

The defendants' policy instead assures that a group of people who are disproportionately African-American have no reason to visit Cliffview Apartments.

73.    The defendant's elevation of felony history as an absolute bar to a tenancy without consideration of other eligibility criteria for tenancy is also counter to other normal business

practices in the apartment industry, in the normal course of business, consideration of income, prior rental history, credit, and other factors occurs simultaneously during the application process, and after an application has been submitted and reviewed.

74.     Departures like this from industry norms suggest an illegal motive.

75.     In light of these, there is no non-discriminatory explanation for why the defendant deliberately chose and continued to implement the no felony convictions policy over an individualized screening practice. Rather, these facts collectively support the inference indeed, they strongly suggest that the defendants fully understand, the unnecessary and unlawful disparate impact of their no felony convictions policy on African-Americans and people with past disability of drug addiction, and that they created their policy precisely because of its discriminatory impact. The no felony convictions policy is a tool that the defendant intentionally uses to minimize the number of African-Americans and people with past disability of drug addiction residing in their apartment complex in violation of the Federal Fair Housing Act and state law.

76.     As a result of the defendant's actions described above, African-Americans and people with a past disability of drug addiction certainly then were denied an apartment, and were compelled to find alternative housing, a less convenient location, or a less desirable - location.

77.      The defendant's discriminatory conduct, if continued, will also deprive others living in and near Cliffview Apartments the benefit of living in a diverse community.

78.     As a result of the defendant's actions described above, the plaintiff Fair Housing Center of Metropolitan Detroit has been directly and substantially injured. The plaintiff has been frustrated in its mission to eradicate discrimination in housing and in carrying out the programs and services it provides, including encouraging intergraded living patterns, eliminating unlawful barriers in housing, and educating the public about fair housing rights and requirements.

79.    Since becoming increasingly aware of the effects of overbroad and punitive criminal records screening policies, including the exclusion of applicants with criminal records without individualized consideration, as well as the disparate impact such polices have on minority applicants and people with a past disability of drug addiction, the plaintiff Fair Housing Center of Metropolitan Detroit has invested considerable time and effort in educating the community about the importance of accessible housing for people with felony records. As a result of discovering the defendant's policy and because it knows that there are still many housing providers with such policies, the plaintiff has directed education and counseling efforts to rebutting the impression that automatic criminal history bans, like the defendant's, are permissible.

80.    Because the defendant's "No Felony Convictions" policy has had and continues to have the effect of banning people with felony records, who are disproportionately African-American, and people with a past disability of drug addiction, as described above, from living at Cliffview Apartments, the defendant's conduct frustrates the plaintiff Fair Housing Center of Metropolitan Detroit's mission of ensuring equal housing opportunity for all individuals, free of arbitrary barriers.

81.     The plaintiff Fair Housing Center of Metropolitan Detroit has been damaged by having to divert resources that could have been used to provide the aforementioned services to instead identify, investigate, and counteract the defendant's discriminatory conduct.

82.    Specifically, the plaintiff Fair Housing Center of Metropolitan Detroit's staff has expended a significant amount of time investigating the defendant's unlawful policy and practice in order to bring a strong case in court that the defendant cannot possibly deny.

83.     In addition, the plaintiff Fair Housing Center of Metropolitan Detroit has diverted time and money to education and outreach efforts directly and specifically aimed at countering the defendant's discrimination, and discrimination by others like them.

84.     The plaintiff Fair Housing Center of Metropolitan Detroit engaged in each of the aforementioned activities in specific response to the defendant's practices, because they were significantly more egregious and exclusionary than the practices of other housing providers.

85.     But for the need to address the defendant's practices, the plaintiff Fair Housing Center of Metropolitan Detroit would have directed these resources to other efforts to further its mission. Specifically, the time and resources would have been allocated towards its programs aimed at encouraging integrated living patterns, eliminating unlawful barriers in housing, educating the public about fair housing rights and requirements, and providing assistance to individuals and families looking for housing or affected by other discriminatory housing practices. The plaintiff's ability to direct resources to these efforts has been and continues to be reduced because of the need to divert resources to addressing and counteract the defendants' discriminatory No Felony Convictions policy.

86.     Until redressed and permanently ceased, the defendant's unlawful, discriminatory action will continue to injure the plaintiff Fair Housing Center of Metropolitan Detroit for example, by:

    a.     Interfering with efforts and programs intended to bring about equality of opportunity in housing;

    b.     Requiring the commitment of scarce resources, including staff time and funding, to investigate and counteract the defendant's discriminatory conduct, thus diverting those resources from the plaintiff's other activities and services, such as education, outreach, and counseling; and

    c.      Frustrating the plaintiff's mission and purpose of promoting the equal availability

of housing to all persons without regard to their membership in protected categories,

including race.

87.    The defendant's unlawful actions described herein were, and are, intentional, willful, and

malicious, and/or have been, and are, implemented with callous and reckless disregard for the

plaintiffs' rights protected under federal and state law.

## Count I:

### Disparate Impact in Violation of the Fair Housing Act, 42 U.S.C. § 3604

88.    The plaintiff restates and realleges as though fully set forth herein paragraphs 1- 87 of this

complaint.

89.    The defendant's acts, policies, and practices have an adverse and disproportionate impact

on African-Americans and people with past disability of drug addiction. This adverse and

disproportionate impact is the direct result of the defendant's no felony convictions policy that

automatically denies housing for people with criminal records without considering the applicants'

individual characteristics and circumstances.

90.     The defendant's no felony convictions policy was not and is not necessary to serve any

substantial, legitimate, nondiscriminatory interest, and any such interest could be satisfied by

another practice - providing individualized consideration that would have a less discriminatory

effect.

91.    The defendant's acts, policies, and practices constitute discrimination and violate the Fair

Housing Act, as amended, 42 U.S.C. § 3604, and implementing regulations, in that:

    a.      The defendant's acts, policies, and practices constitute a refusal to rent housing or

negotiate for the rental of housing because of race and the past disability of drug addiction,

have made housing unavailable because of race in violation of 42 U.S.C. § 3604, refusal to accommodate, and past disability of drug addiction, in violation of 42 U.S.C. § 3604(f)(1), (2), and (3).

b.      The defendant's acts, policies, and practices provide different terms, conditions, and privileges of rental housing, as well as different services and facilities in connection therewith, on the basis of race, the past disability of drug addiction, and a refusal to accommodate in violation of 42 U.S.C. § 3604(b); and 42 U.S.C. §3604(f)(1), (2), and (3).

c.      The defendant's notices and statements indicate a preference, limitation, and discrimination based on race and disability in violation of 42 U.S.C. § 3604(c). The defendants' statement in its no felony convictions policy that excludes any person from renting an apartment at Cliffview Apartments because of any criminal conviction has a discriminatory effect on African-Americans and people with a past disability of drug addiction because they actually or predictably result in a disparate impact on the basis of race.

### **Count II:**

### **Intentional Discrimination in Violation of the Fair Housing Act 42 U.S.C. § 3604**

92.      The plaintiff restates and realleges as though fully set forth herein paragraphs 1- 91 of this complaint.

93.      The defendant's acts, policies, and practices have been carried out with the intention of discriminating on the basis of race and people with a past disability of drug addiction.

94.      On information and belief, the defendants are aware of the disparate impact that their no felony convictions policy has on African-Americans and people with a past disability of drug addiction. They are also aware of HUD's April 2016 Guidance regarding criminal records based

screening policies, including its repudiation of automatic blanket bans and its instructions to adopt less discriminatory approaches to screening, such as individual assessments of criminal histories, that would adequately protect public safety and property concerns.

95.    However, despite this knowledge and awareness, the defendant departed from industry-practices and deliberately chose and continue to implement its more discriminatory method for screening on the basis of criminal history. Under these facts, no legitimate, non-discriminatory explanation exists for the defendant's choice in adopting and maintaining the more discriminatory and exclusionary policy. The defendants selected the no felony convictions policy with the intent and expectation that the policy would disproportionately prevent African-Americans and the people with a past disability of drug addiction from obtaining housing at Cliffview Apartments.

96.    The defendant's acts, policies, and practices constitute intentional discrimination and violate the Fair Housing Act, as amended, 42 U.S.C. § 3604, and its implementing regulations, in that.

    a.    The defendant's acts, policies, and practices constitute a refusal to rent housing or negotiate for the rental of housing because of race and the past disability of drug addiction and have made housing unavailable because of race and the past disability of drug addiction in violation of 42 U.S.C. § 3604(a); 42 USC §3604(f)(1), (2) and (3).

    b.    The defendant's acts, policies, and practices constitute a refusal to rent housing or negotiate for the rental of housing because of race and the past disability of drug addiction and have housing unavailable because of race and the past disability of drug addiction, and refusal to accommodate, in violation of 42 U.S.C. § 3604(b), and 42 U.S.C. §3606(f)(1), (2), and (3).

c.      The defendant's notices and statements indicate a preference, limitation, and discrimination based on race and the past disability of drug addiction, and refusal to accommodate, in violation of 42 U.S.C. § 3604(c).

## Count III

**Disparate Impact in Violation of the Elliott-Larson Civil Rights Act, MCL 37.2502 and the Persons with Disabilities Civil Rights Act, MCL 37.1502**

97.    The plaintiff restates and realleges as though fully set forth herein paragraphs 1 – 96 of this complaint.

98.     The defendant's acts, policies, and practices have an adverse and disproportionate impact on African-Americans and people with a past disability of drug addiction. This adverse and disproportionate impact is the direct result of the defendant's no felony convictions policy, pursuant to which it automatically refuses housing to people with a felony conviction with no consideration of their individual characteristics and circumstances.

99.     The defendant's no felony convictions policy was not and is not necessary to serve any substantial, legitimate1 nondiscriminatory alleged interest, and any such interest could be satisfied by another practice providing individualized consideration that would have a less discriminatory effect.

100.    The defendant's acts, policies, and practices constitute discrimination and violate the Elliott-Larson Civil Rights Act, MCL 37.2502, and the Persons with Disabilities Civil Rights Act and its implementing regulations, in that:

a.      The defendants' acts, policies, and practices constitute a refusal to rent housing or negotiate for the rental of housing because of race, and have made housing unavailable because of race, in violation of MCL 37.2502 (l)(a). (c), and (d), and the Persons with Disabilities Civil Rights Act, in violation; of

b.     The defendants' acts, policies, and practices provide different terms, conditions, and privileges of rental housing, as well as different services and facilities in connection therewith, on the basis of race, and the Persons with Disabilities Civil Rights Act, in violation of MCL 37.1502(1)(b);

c.     The defendants' notices and statements indicate a preference, limitation, and discrimination based on race, and the Persons with Disability in violation of MCL 37.2502, and the Persons with Disabilities Civil Rights Act, in violation of MCL 37.1502(1)(f).  The defendant's statement in its no felony convictions policy that excludes any person from renting an apartment at Cliffview Apartments because of criminal history has a discriminatory effect on African-Americans and people with a past disability of drug addiction because they actually or predictably result in a disparate impact on the basis of race.

## **Count IV:**

**Intentional Discrimination in Violation the Elliott-Larson Civil Rights Act, MCL 37.2502, and the Persons with Disabilities Civil Rights Act, MCL 37.1502**

101.    The plaintiff restates and realleges as though fully set forth herein paragraphs 1 – 100 of this complaint.

102.     The defendant's acts, policies, and practices are carried out with the intention of discriminating on the basis of race and people with a past disability of drug addiction.

103.     On information and belief, the defendant is aware of the disparate impact that its no felony convictions policy has on African-Americans and people with a past disability of drug addiction. It is also aware of HUD's April 2016 Guidance regarding criminal records based screening policies, including its repudiation of automatic blanket bans and its instructions to adopt

less discriminatory approaches to screening, such as individual assessments of criminal histories, that would adequately protect public safety and property concerns.

104.     However, despite this knowledge and awareness, the defendant departed from industry practices and deliberately chose and continue to implement its more discriminatory method of screening on the basis of criminal history, under these facts, no legitimate, non-discriminatory explanation exists for the defendant's choice in adopting and maintaining the more discriminatory and exclusionary policy. The defendants selected the no felony convictions policy with the intent and expectation that the policy would disproportionately prevent African-Americans and people with a past disability of drug addiction from obtaining housing at Cliffview Apartments.

105.     The defendant's acts, policies, and practices constitute intentional discrimination and violate the Elliott-Larson Civil Rights Act, and its implementing regulations, in that:

    a.     The defendant's acts, policies, and practices constitute a refusal to rent housing or negotiate for the rental of housing because of race and a unavailable because of race, in violation of MCL 37.2502, addiction, in violation of MCL 37.1502.

    b.     The defendants' acts, policies, and practices provide different terms, conditions, and privileges of rental housing, as well as different services and facilities in connection therewith, on the basis of race, in violation of MCL 37.2502, and people with a past disability of drug addiction, in violation of MCL 37.1502.

    c.     The defendants' notices and statements indicate a preference limitation, and discrimination based on race, in violation of MCL 37.2502, and people with a past disability of drug addiction, in violation of MCL 37.1502.

## **REQUESTED RELIEF**

106.     The plaintiff respectfully asks that this Court grant it the following relief:

(1)     Enter a declaratory judgment finding that the foregoing actions of defendant violates 42 U.S.C. § 3604, 42 U.S.C. 3604(f), MCL 37.2502 and MCL 37.1502;

(2)     Enter a permanent injunction;

(3)     Enjoining the defendant and its directors, officers, agents, and employees from publishing, implementing, and enforcing the illegal discriminatory conduct described herein:

(4)     Directing the defendant and its directors, officers, agents, and employees to eliminate its blanket no felony convictions policy, to reduce the adverse and disproportionate effect it causes on the basis of race and make it consistent with the Federal Fair Housing Act, the HUD Guidance, MCL 37.2502 and MCL 37.1502;

(5)     Directing the defendant and its directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and prevent additional instances of such conduct or similar conduct from occurring in the future;

(6)     Award compensatory damages to the plaintiff in an amount to be determined that would fully compensate the plaintiff for injuries caused by the conduct of the defendant alleged herein;

(7)     Award punitive damages to the plaintiff in an amount to be determined that would punish the defendant for the willful, malicious, and reckless conduct alleged herein and that would effectively deter similar conduct ln the future;

(8)     Award the plaintiff its reasonable attorney's fees and costs under 42 U.S.C. § 3613(c)(2), MCL 37.2101 *et seq.,* and MCL 37.1101 *et seq. ;*

(9)     Award costs and prejudgment interest to the plaintiff; and

(10)    Order such other relief as this Court deems just and equitable.

Dated: October 4, 2024

WILLIAM F. PIPER, PLC.
Attorney for Plaintiff
By: */s/ William F. Piper*
William F. Piper (P38636)
BUSINESS ADDRESS:
9848 Portage Rd.
Portage, MI  49002
Phone: 269.321.5008
Fax: 269.321.5009